UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID D. BUTLER,

                Plaintiff,

    v.

KEVEN BOWEN, et al.,

                Defendant.

CASE NO. 2:24-cv-01071-KKE-BAT

**REPORT AND RECOMMENDATION**

Plaintiff, David D. Butler, proceeds *pro se* and moves to proceed *in forma pauperis* (IFP) in this 42 U.S.C. § 1983 civil rights action. Dkts. 1, 4. This is the second action plaintiff has filed alleging, in part, violation of his Eighth Amendment rights due to improper treatment for his mental health needs during a specific period between June 2020 to February 2023, when he was detained at Monroe Correctional Complex (MCC). Dkt. 4-1; *see Butler v. Hanken*, 23-cv-01624-LK-BAT, Dkt. 6.

For the reasons below, the undersigned recommends that plaintiff's claims be dismissed without prejudice. Plaintiff's motion to proceed IFP (Dkt. 4) should be STRICKEN as moot.

//

//

//

REPORT AND RECOMMENDATION - 1

# BACKGROUND

**A.    Plaintiff's Complaint**

Plaintiff's complaint in this action alleges violation of his Eighth Amendment rights due to inadequate medical care and conditions of confinement. Dkt. 4-1. Plaintiff names as defendants: Keven Bowen (MHA, Max Custody Committee, Department of Corrections (DOC)), Karie Rainier (Mental Health, Max Custody Committee, DOC), John Doe (Max Custody Committee, DOC), D. Stover (Psychologist 3, MCC), John Doe (Multidisciplinary Team, Monroe Correctional Complex - Special Offenders Unit (MCC-SOU)), John Doe (Facility Risk Management Team, MCC - SOU), Lamelli (Custody Unit Supervisor, Custody Program Manager, Washington State Penitentiary (WSP)), Mendiola (Custody Unit Supervisor, IMU South, WSP), Jon Reyes (PA, Physician, WSP), Rainy Gibson (PHD, Psychologist, WSP), Jon Coers (Classification Officer, WSP). *Id.* at 1-3.

Plaintiff alleges he has schizo-affective bi-polar disorder, PTSD, borderline personality disorder and panic attacks and requires medication and therapy to manage his mental illness. *Id.* at 6-12. He alleges he was sent to Western State Hospital for competency restoration for his criminal proceedings and was placed on Latuda and Valium. *Id.* Plaintiff alleges in June 2020 he was placed in what was then MCC/SOU, now called Monroe Correction Complex – Sky River Treatment Center (MCC/SRTC)[1], a Residential Treatment Unit (RTU) which provides DOC's highest level of care for mentally ill inmates. *Id.*

Plaintiff alleges MCC/SRTC mental health staff took him off his mental health medication Latuda and Valium and that this led to a severe decompensation in his mental health

---

[1] The Court will hereinafter refer to this facility as MCC/SRTC.

REPORT AND RECOMMENDATION - 2

causing him to exhibit severe behavior problems, incur infractions, and as a result, be placed in solitary confinement. *Id.*

Plaintiff alleges in January of 2023, the Multi-Disciplinary Team and Facility Risk Management Team (MDT/FRMT) at MCC/SRTC and the DOC Headquarters Max Custody Committee chose to discharge him from RTU level of care despite the fact that he was not being provided appropriate medication and was suffering self-harm instances at the time of his discharge. *Id.* Plaintiff alleges on February 14, 2023, he was sent to the WSP Intensive Management Unit (IMU) by the MCC/SRTC MDT/FMRT and the Headquarters Max Custody Committee. *Id.*

Plaintiff alleges WSP/IMU is not properly equipped to house inmates suffering from severe mental illness symptoms. *Id.* Plaintiff alleges that due to the lack of proper mental healthcare, he had severe mental health breakdowns resulting in him being operated on more than 10 times and that in two instances the operations required his stomach be cut open. *Id.* Plaintiff indicates this was due to untrained staff repeatedly giving him plastic items prohibited by his conditions of confinement which, due to his mental health issues, he would swallow in order to self-harm. *Id.* He alleges he was unjustly placed on a 5-point restraint table following these two surgeries due to concern that he would injure his post-surgery sites despite his assurances that he would not do so. *Id.* He alleges after his first surgery he had an open wound on his stomach where he had an infection from the surgery. *Id.* He alleges he was placed on the 5-point restraint table for a month straight and was only permitted to walk and stretch out his stomach 15 minutes twice per day. *Id.* He alleges he suffered constant cramping pain in his stomach as a result. *Id.*

REPORT AND RECOMMENDATION - 3

Plaintiff alleges a few days after being placed on the restraint table defendant Reyes took him off of his oxycodone pain medication. *Id.* Plaintiff alleges he asked to be placed back on the medication due to severe pain and defendant Reyes refused. *Id.* Plaintiff alleges at his follow up appointment the surgeon was shocked he had been taken off the medication and prescribed him additional oxycodone. *Id.*

Plaintiff alleges he suffers from night terrors and anxiety from being placed in the 5-point restraint table. *Id.*

Plaintiff alleges he believes he is oppressed by and at times fully possessed by demonic forces that at times control his actions. *Id.* He alleges the MCC/SRTC mental health staff were not properly treating his symptoms with antipsychotic and anxiety medications and that this led to his behaviors. *Id.* He alleges the MDT/FRMT at MCC/SRTC and Headquarters Max Custody Committee "took out of context what was happening to [plaintiff's] state of mind" just so they could discharge him from RTU level care and send him to WSP/IMU. *Id.*

Plaintiff alleges he attempted to appeal his classification but that the Headquarters Max Custody Committee never responded to his appeal.

He alleges on October 5, 2023, he filed a complaint with the Washington Office of Corrections Ombuds (OCO). *Id.* Plaintiff indicates the OCO investigated and determined that per DOC policy plaintiff should be housed in a RTU level setting and in March 2024 he was sent back to MCC/SRTC. *Id.*

In Claim One, plaintiff alleges defendants Stover, Rainier, Bowen, and Coers were deliberately indifferent to his serious medical and mental health needs. *Id.* at 12-19. Plaintiff alleges defendant Stover was a member of the MDT/FRMT at MCC/SRTC and wrote the documents to discharge him from RTU level care at MCC/SRTC. *Id.* He alleges defendant

REPORT AND RECOMMENDATION - 4

Stover was aware he was suffering serious self-harm and other symptoms of mental illness at the time he wrote the discharge documents but downplayed this in order to justify discharge. *Id.* Plaintiff alleges defendant Rainier was a member of the Max Custody Committee and director of mental health at DOC and had knowledge that plaintiff's serious mental health needs were not being met and took no action to keep him in RTU level care. *Id.* He alleges defendant Rainier also knew of plaintiff's struggles at WSP/IMU at the latest in May 2023, but took no action to move him. *Id.* Plaintiff alleges defendant Bowen was the Mission Housing Director of the Max Custody Committee and chose to discharge plaintiff from RTU level care at MCC/SRTC and kept plaintiff at WSP/IMU for over a year despite his self-harming behavior. *Id.* Plaintiff alleges defendant Coers was his classification counselor at WSP/IMU and continued to recommend plaintiff be kept there despite having knowledge plaintiff was suffering severe mental illness symptoms and engaging in self-harm. *Id.*

In Claim Two, plaintiff alleges defendants Reyes and Gibson were part of an MDT responsible for deciding to keep him strapped to the 5-point restraint table for 23.5 hours per day at WSP despite knowing plaintiff was suffering from severe pain and psychological distress. *Id.*

In Claim Three, plaintiff alleges defendants Lamelli, WSP Correctional Program Manager, and Mendiola, WSP CUS, were responsible for allowing their staff at WSP to give plaintiff plastic items that he subsequently ingested, despite the fact that his conditions of confinement prohibited him from having such items in his cell. *Id.*

**B.    Plaintiff's Prior Related Action**

Plaintiff filed a prior action in this Court in which he raised related claims against different defendants regarding the inadequate treatment of his mental health issues by employees at MCC/SRTC. *See Butler v. Hanken*, 23-cv-01624-LK-BAT, Dkt. 6. Plaintiff's complaint

alleges causes of action under the Eighth and First Amendments of the United States Constitution and names the following DOC mental health staff at MCC/SRTC as defendants: James Hanken, Calvin Cogburn, and Steven Jewitt. *Id.*

In Count One, plaintiff alleges defendants Cogburn and Jewitt acted with deliberate indifference to his serious mental health needs in violation of the Eighth Amendment. *Id.* He alleges he has been diagnosed with several major psychological disorders including panic disorder, post-traumatic stress disorder, bipolar disorder, schizoaffective disorder, and depression. *Id.* Plaintiff alleges he was prescribed Latuda, Valium and "Effexir" for his psychiatric disorders and was taking these medications at Thurston County Corrections Center prior to being transferred to DOC custody. *Id.* Plaintiff states that the judgment and sentence in his underlying criminal case ordered that he remain on appropriate mental health medications during his incarceration. *Id.* He contends on August 29, 2021, defendant Jewitt discontinued the Latuda without tapering or substituting the medication and without conducting a comprehensive psychological assessment. *Id.*

Plaintiff indicates that discontinuing Latuda caused plaintiff to deteriorate psychologically and caused him to experience significant withdrawal symptoms. *Id.* Plaintiff indicates his mental health steadily deteriorated and he became increasingly dysfunctional and dysregulated causing him to engage in significant self-harming behavior by swallowing foreign objects which required surgeries and frequent prolonged stays in solitary confinement and the constant observation area. *Id.*

Plaintiff states defendant Cogburn was aware he was psychologically deteriorating but ignored his requests to be placed back on Valium and Latuda and failed to assess plaintiff every 90 days for medication management as required by his mental health treatment plan. *Id.*

REPORT AND RECOMMENDATION - 6

1        In Count Two, plaintiff alleges defendant Hanken violated his First Amendment rights by obstructing his communication and legal correspondence with his attorney and that he violated attorney-client privilege by reading and opening his legal mail outside of plaintiff's presence. *Id.* Specifically, plaintiff alleges defendant Hanken opened and read legal mail sent from plaintiff's attorney outside of plaintiff's presence which included a HIPAA authorization form. *Id.* Plaintiff states that when he requested materials to send the HIPAA release back to his attorney via certified mail defendant Hanken took the documents away, over plaintiff's objections, and subsequently told plaintiff he had emailed and mailed the form to counsel. *Id.* Plaintiff indicates his attorney's office later informed him that they had never received the email. *Id.* Plaintiff states he asked defendant Hanken to return the form, but that defendant Hanken refused to do so. *Id.*

       Plaintiff has been appointed counsel in this previously filed action and a pretrial scheduling order has been issued. *Id.* Dkts. 20, 29.

## DISCUSSION

       The claims plaintiff raises in his first action related to his mental health treatment by defendants Cogburn and Jewitt at MCC/SRT and the claims he raises in his second action related to the decision by defendants Bowen, Rainier, Stover, and the "Doe" defendants, to discharge him from RTU level care at MCC/SRT and transfer him to non-RTU level care at WSP, are significantly interrelated. These claims revolve around whether defendants were aware of plaintiff's serious mental health needs and acted with deliberate indifference in failing to properly medicate him and failing to keep him in RTU level care. It is appropriate for these claims to be litigated in the same action.

       Plaintiff has been appointed counsel in this previously filed action and a pretrial scheduling order has been issued. Plaintiff still has time – until September 30, 2024 -- under the

pretrial schedule to seek to file an amended pleading. Plaintiff will not be prejudiced by dismissal of these claims without prejudice as he may seek to raise these claims in an amended pleading, through counsel, in his previously filed action. Accordingly, the Court recommends that these claims be dismissed without prejudice.

Plaintiff's remaining claims alleging deliberate indifference by defendants Lamelli, Mendiola, Reyes, Gibson, Coers, Bowen and Rainier, related to conditions of confinement and inadequate medical treatment at WSP, should be brought in a separate action. However, because those claims relate to occurrences at WSP and the substance of the claims involves the actions of defendants employed at WSP[2] (which is in the Eastern District of Washington) it appears that venue for those claims is proper in the United States District Court for the Eastern District of Washington. *See* 28 U.S.C. § 1391(b).

When a case is filed in the wrong district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. 1406(a). Under the circumstances here, it is appropriate to dismiss these claims without prejudice, allowing plaintiff the opportunity to re-file these claims in the proper district – the Eastern District of Washington.

## CONCLUSION

Plaintiff's claims related to the decision by defendants Bowen, Rainier, Stover, and the "Doe" defendants, to discharge him from RTU level care at MCC/SRT and transfer him to non-RTU level care at WSP should be dismissed without prejudice. Plaintiff should have the

---

[2] The Court notes that although plaintiff also lists DOC headquarters defendants Bowen and Rainier with respect to this part of his claims, the only allegations against them are the vague, conclusory assertions that they were somehow aware the WSP-employee defendants had treated him improperly while he was housed there and that they failed to transfer him. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient" to state a claim.).

REPORT AND RECOMMENDATION - 8

opportunity to file these claims, through counsel, in his previously filed related action, *Butler v. Hanken*, 23-cv-01624-LK-BAT. Plaintiff's remaining claims alleging deliberate indifference by defendants Lamelli, Mendiola, Reyes, Gibson, Coers, Bowen and Rainier, related to events occurring at WSP, should be dismissed without prejudice for plaintiff to re-file in the proper venue – the Eastern District of Washington. Plaintiff's motion to proceed IFP (Dkt. 4) should be STRICKEN as moot.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 23, 2024.** The Clerk should note the matter for **August 26, 2024**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 9th day of August, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9